1

2

3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

4

5

6

7

8

9

10

11

12

13

14

15

16

| | |
|---|---|
| MARTIN WEINBERG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. _____ |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| LEGION ATHLETICS, INC., *a Florida* | ) |
| *corporation*; MICHAEL MATTHEWS; | ) |
| CHRISTOPHER BARAKAT; SERDAR | ) |
| TUNCALI; DR. JOSHUA MAHER; | ) |
| DR. BRIAN GRANT; DR. MIKE RUSCIO; | ) |
| DR. TANEI RICKS; DR. KASEY JO | ) |
| ORVIDAS; EUGENE K. CHOI, M.D.; | ) |
| TYLER CLINARD; DR. NOORA | ) |
| ALAKULPPI; DR. AYLIA | ) |
| MOHAMMADI; DENNIS BOJRAB II, | ) |
| M.D.; DR. JESSIE HOFFMAN; and | ) |
| ASTRID NARANJO, | ) |
| | ) |
| Defendants. | ) |

17

18

### COMPLAINT

19

20

21

22

23

24

25

26

27

Martin Weinberg ("Plaintiff"), by and through undersigned counsel, hereby brings this action against Defendants Legion Athletics, Inc.; Michael Matthews; Christopher Barakat; Serdar Tuncali; Dr. Joshua Maher; Dr. Brian Grant; Dr. Mike Ruscio; Dr. Tanei Ricks; Dr. Kasey Jo Orvidas; Eugene K. Choi, M.D.; Tyler Clinard; Dr. Noora Alakulppi; Dr. Aylia Mohammadi; Dennis Bojrab II, M.D.; Dr. Jessie Hoffman; and Astrid Naranjo, alleging that the Defendants violated various federal and statutes and/or breached duties to him, thereby causing harm to Plaintiff's health and other injuries, by permitting the marketing and sale of deceptively labelled dietary supplements containing African geranium without adequate instructions

28

regarding safe dosage and/or warning relating to possible side effects of extended use; and upon information and belief and investigation of counsel, alleges as follows:

**PARTIES**

1.    Plaintiff Martin Weinberg resides in Phoenixville, Pennsylvania.

2.    Defendant Legion Athletics, Inc. is a Florida corporation with its principal place of business in Clearwater, Florida.

3.    Defendant Michael Matthews is the founder and president of Legion Athletics. On information and belief, he resides in Clearwater, Florida.

4.    Defendant Christopher Barakat is a member of the Legion Athletics Scientific Review Board. He is a competitive weightlifter and athletic trainer who provides coaching and other services at CompetitiveBreed.com, which states that it is sponsored by Legion Athletics. Barakat purports to be "a published scientist who continues to study how to optimize body composition through training and nutritional interventions." On information and belief, he resides in Tampa, Florida.

5.    Defendant Serdar Tuncali is a member of the Legion Athletics Scientific Review Board. He is a cancer researcher who writes about fitness at the website NerdGettingFit.com. He is a research associate at the Translational Genomics Research Institute in Phoenix, Arizona and on information and belief resides in that city.

6.    Defendant Dr. Joshua Maher is a member of the Legion Athletics Scientific Review Board. He is a research technician and doctoral student in the Microbial Surveillance Laboratory, which is co-operated by Kansas State University and Merck Animal Health. On information and belief, he resides in Olathe, Kansas.

7.     Defendant Dr. Brian Grant is a member of the Legion Athletics Scientific Review Board. He is a physical therapist, conditioning coach, and natural bodybuilder who writes at DrBrianGrant.com. On information and belief, he resides in Evansville, Indiana.

8.     Defendant Dr. Mike Ruscio is a member of the Legion Athletics Scientific Review Board. He is a chiropractor and founder of the Ruscio Institute, which provides alternative treatments for gastric ailments. On information and belief, he resides in Las Vegas, Nevada.

9.     Defendant Dr. Tanei Ricks is a member of the Legion Athletics Scientific Review Board. He is an organic chemist and bodybuilder who writes at hackorganicchemistry.com. A postdoctoral fellow at the University of Memphis, on information and belief he resides in Memphis, Tennessee.

10.     Defendant Dr. Kasey Jo Orvidas is a member of the Legion Athletics Scientific Review Board. She is a psychologist and fitness coach who writes at kjocoaching.com, where her clients can purchase Legion Athletics products at a discount. On information and belief, she resides in Raleigh, North Carolina.

11.     Defendant Eugene K. Choi, M.D. is a member of the Legion Athletics Scientific Review Board. A graduate of Princeton University and Cornell Medical School, he is a diagnostic radiologist and crossfit enthusiast. On information and belief, he lives in Los Angeles, California.

12.     Defendant Tyler Clinard is a member of the Legion Athletics Scientific Review Board. He is a pharmacist who on information and belief resides in Clarksville, Tennessee.

13.     Defendant Dr. Noora Alakulppi is a member of the Legion Athletics Scientific Review Board. She is a geneticist and nutrition coach. On information and belief, she resides in Helsinki, Finland.

14.     Defendant Dr. Aylia Mohammadi is a member of the Legion Athletics Scientific Review Board. She is the founder and scientific director of Genotique, a personalized nutrition company. On information and belief, she resides in Toronto, Ontario.

15.     Defendant Dennis Bojrab II, M.D. is a member of the Legion Athletics Scientific Review Board. He is a physician in Otology, Neurotology, Otolaryngology and Skull Base Surgery, with an interest in fitness and training for older persons. On information and belief, he resides in Farmington Hills, Michigan.

16.     Defendant Dr. Jessie Hoffman is a member of the Legion Athletics Scientific Review Board. She is a dietician who writes at jessiephd.com. On information and belief, she resides in Cincinnati, Ohio.

17.     Defendant Astrid Naranjo is a member of the Legion Athletics Scientific Review Board. She is a clinical dietician and personal trainer. On information and belief, she resides in Queensland, Australia.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction because at least one of Plaintiff's claims arises under a federal statute; specifically the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq*. The Court has supplemental jurisdiction over the pendent state statutory and common law claims pursuant to 28 U.S.C. § 1367.

19.     In the alternative, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000.

20.     This Court has personal jurisdiction over Defendants because this action arises out of and relates to Defendants' contacts with this forum.

21.     Those contacts include but are not limited to the commission of various torts as stated herein in this district and/or causing harm to Plaintiff in this district; sales of Immune

Support directly to commercial and individual consumers located in this district, including Plaintiff; shipping Immune Support to consumers in this district, including Plaintiff; knowingly directing advertising and marketing materials concerning Immune Support into this district through wires and mails, both directly and through electronic and print publications that are directed to consumers in this district; and operating an e-commerce web site that offers Immune Support for sale to consumers in this district, through which consumers residing in this district have purchased Immune Support.

## FACTUAL ALLEGATIONS

### A.    Legion Athletics

22.    Through its website and various third-party retailers, Legion Athletics sells individualized fitness coaching plans, meal and eating plans, and dietary supplements, including protein powders, fat loss supplements, and herbal supplements to support health and wellness.

23.    Legion Athletics' website describes the company's approach to formulating its supplements. The company, for example, states that some side effects are inherent to botanical and other dietary supplements, and that those effects may vary based on age, sex, body composition, etc. *See* https://legionathletics.com/supplement-production/.

24.    Given the inevitability of some side effects from certain supplements, the company pledges to "Use Ingredients that Are as Safe as Possible…. Legion supplements should be as safe as we can make them while getting the job done."

25.    The company also pledges to describe likely side effects accurately on its product labelling and on its website.

26.    A significant component of the Legion Athletics sales pitch is its focus on science- and evidence-backed practices. In an essay on the Legion Athletics website, Matthews asserts that the dietary supplement industry is "full of misinformation, disinformation, idiots, liars, and

hucksters." Matthews, by contrast, pledges to give "practical, easy-to-understand advice grounded in real science and results." *See* https://legionathletics.com/michael-matthews/.

27.    The Legion Athletics website also asserts that its products are "backed by peer-reviewed scientific research" and that the ingredients in its products are formulated in "exact amounts shown to be safe and effective in peer-reviewed scientific research":



**Science-Backed Ingredients**

Every ingredient in Immune is backed by peer-reviewed scientific research demonstrating clear benefits in healthy humans.



**Clinically Effective Doses**

Every ingredient in Immune is included at clinically effective levels, which are the exact amounts shown to be safe and effective in peer-reviewed scientific research.

*See* https://legionathletics.com/products/supplements/immune-support/.

28.    In the March 13, 2020 video viewed by Plaintiff and described further below, Matthews claimed that the company would sell $25 to $27 million in supplements and other products in 2020 alone.

**B.    The Legion Athletics Scientific Review Board**

29.    Legion Athletics' marketing materials refer frequently to its Scientific Review Board. The company claims that this Board reviews all of its products and publications and "analyze[s] the overall weight on the evidence on any and all topics related to diet, exercise, supplementation, and more." *See* https://legionathletics.com/scientific-review-board/.

30.    On information and belief, members of the Scientific Review Board are agents and/or employees of Legion Athletics.

31.     Legion Athletics claims that the Scientific Review Board reviews products and content "to ensure all key information and claims are backed by high-quality scientific research and explained simply and precisely."

32.     In the Facebook Live video reviewed by Weinberg and described in further detail below, Matthews claims that the Scientific Review Board is a "who's who of the evidence-based fitness space."

**C.     Weinberg Purchases Immune Support Based on Representations Made by Defendants.**

33.     Martin Weinberg lives in the Philadelphia area and owns a small but successful marketing and advertising business.

34.     In March 2020, like all Americans, Weinberg became aware of the spread of COVID-19 through the population. Weinberg has always been focused on his health, taking a multi-vitamin and exercising regularly. He was concerned about catching COVID and took appropriate steps to avoid being infected.

35.     One of the steps Weinberg took to reduce his chances of catching COVID was to research whether he could use supplements to reduce his chance of catching the disease.

36.     In his research, Weinberg discovered and viewed a Facebook Live video featuring Mike Matthews, the founder and president of Legion Athletics.

37.     In this video, dated March 13, 2020, Matthews does a live Q&A with subscribers and users of Legion Athletics products. During the video, Matthews wears a t-shirt with a prominent Legion Athletics logo on it.

38.     Matthews told Facebook Live viewers that "the weight of the evidence" supported his claim that a new Legion Athletics product called Immune Support "may reduce the likelihood of contracting this coronavirus and may help your body get over it faster—it may, and I stand behind the science of that…. I think that it would be silly for me to not release the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

product right now when it could help some people considering that we have this coronavirus going around." *See* https://www.facebook.com/muscleforlifefitness/videos/905115963281942/UzpfSTQ3ODMM2NTU4MjI0NzoyODQ0OTE5NjQ1NTkzNDYy/ (last viewed March 28, 2022).

39.     In the video, Matthews also claimed that the members of the Legion Athletics Scientific Review Board "all had input on this product," *i.e.*, Immune Support, and that the "research behind each of the ingredients is 100 percent transparent."

40.     Immune Support had been released by Legion Athletics right before the lockdowns associated with the COVID-19 pandemic took effect.

41.     Immune Support contains 800 mg of *Pelargonium sidoides*, or "African geranium," per serving, as shown on the nutritional label and other advertising for the Product:



42.     African geranium, also known as "umckaloabo," is a plant native to South Africa. The roots of this plant have been used in traditional South African medicine for the treatment of

respiratory diseases, diarrhea, dysmenorrhea, and hepatic disorders. In modern times, extracts of the plant's roots are used to treat acute bronchitis, acute pharyngitis, and the common cold.

43.     African geranium contains coumarin, a blood thinner that causes hepatoxicity and elevated liver enzymes when ingested at high amounts.

44.     The use of African geranium extracts has generally been judged to be safe for short-term use of up to seven days in the treatment of acute bronchitis and other respiratory tract conditions. Use of this material by persons with liver disease or those taking hepatoxic medications can be unsafe, however. Moreover, the recommended ***short-term*** dosage of African geranium is about 90 milligrams per day. It is not recommended for long-term use because of its hepatoxicity and other liver effects.

45.     Studies on the use of African geranium have generally focused on its efficacy in treating conditions such as bronchitis and respiratory tract infections. Those studies have generally observed that African geranium is safe to use over a course of seven or 14 days, at doses of between 30 mg and 360 mg per day.

46.     In those studies, to the extent that effects were observed, they included fatigue, gastric distress, dark urine and oily stools, jaundice, and elevated liver enzymes.

47.     A fundamental principle of toxicology is that "the dose makes the poison." The labelling on the Immune Support product encouraged users to take a full dose of 800 mg every day, without setting any time limit (such as 7 or 14 days) on the use of the product:

## How to Use Immune

Take up to 6 capsules daily. For optimal results, take 2 capsules every 3-5 hours when you're around sick people (to prevent sickness) or feel you might be getting sick or are sick.

*See* https://legionathletics.com/products/supplements/immune-support/#how-to-use.

48.     The labelling and associated website material for Immune Support did not contain any warnings about potential hepatoxicity or liver disease likely to be the result of long-term, high-dose use of Immune Support.

49.     Relying on the statements made by Matthews and on the product's labelling and Legion website, and on the assurances that the product had been reviewed by the Legion Athletics Scientific Review Board, Weinberg first purchased Immune Support on or about March 20, 2020 (Order No. 1239143) and began taking the recommended dosage on a near-daily basis.

**D.     Weinberg is Hospitalized After Taking Immune Support in a Manner Consistent With Its Labelling.**

50.     Within a month of beginning to take Immune Support, Weinberg began to experience reduced energy and mental and physical lethargy, often causing him to take naps in the middle of the day when he otherwise would have been working. This continued for several months.

51.     As Weinberg is a marketing executive whose job depends on his creativity, engagement, and attention to detail, these symptoms began to affect his work performance, including interfering in efforts to obtain new work or expand the business relationship with existing clients.

52.     However, relying on assurances from Legion Athletics that the company "Use[s] Ingredients that Are as Safe as Possible," formulates ingredients in "exact amounts shown to be safe and effective in peer-reviewed scientific research," and provides warnings on its labels when side effects are inherent to the ingredients used, Weinberg did not connect these symptoms to Immune Support.

53.     Weinberg's condition began to worsen in January 2021. He developed severe acid reflux, so serious that he was kept up at night. He was prescribed medication for this condition, which helped but did not resolve these symptoms.

54.     In addition, and alarmingly, that month Weinberg also began to experience nausea and frequent gastric distress as well as symptoms of jaundice: dark urine, light stools, yellow skin, and yellow eyes. This grew rapidly worse, until friends and coworkers began to notice and express serious concern about Weinberg's health.

55.     Because of his increasingly jaundiced condition and continued symptoms of fatigue, gastric distress, and acid reflux, Weinberg's physician had him come in for blood work on or about February 2, 2021. The next day, at 6:30 a.m., Weinberg was called by his doctor and told to report immediately to the emergency room, as his bilirubin number was at a critical level of 22.4, among other alert level numbers.

56.     Weinberg was admitted to the University of Pennsylvania Medical Center on or about February 3, 2021 because of his symptoms and liver enzyme condition and was hospitalized for three days. When doctors discovered he was taking Immune Support and that African geranium was among the ingredients of the supplement, he was advised to immediately stop taking the supplement. Weinberg's doctors discovered what Legion Athletics had not stated on the labelling or marketing materials for Immune Support: jaundice and attendant symptoms of liver failure are among the known side effects of *Pelargonium sidoides.*

57.     Weinberg's gastroenterology doctors noted his use of Immune Support and described specifically the link between African geranium and liver failure in the medical notes section of his charts:

---HPI---

Martin Weinberg is a very pleasant 56 year old Caucasian gentleman who presented to the ER today with a several week history of painless jaundice.   The patient states about 3-4 weeks ago he had increased symptoms of GERD, which improved somewhat with 2 weeks of omeprazole.   About 2 weeks ago he noted that his urine was dark.   The patient presented to his PCP who ordered labs that showed markedly elevated liver enzymes. Ultrasound was ordered but not yet performed.   He is going there now.

The patient denies any known history of hepatitis.   He has no significant alcohol use.  He denies any history of IV drug abuse.   He has been using a supplement called IMMUNE

that contains African geranium which has been found, per ER pharmacist to cause liver injury/failure

58.     Specialists at the University of Pennsylvania concurred, noting that Immune Support had "possible hepatoxicity":

Attestation signed by Kuryan, Alex S, MD at 2/3/2021 1:52 PM

I saw and evaluated the patient and reviewed the note by our physician extender. I agree with the history, physical exam, and medical decision making made by the physician extender with the following additions/exceptions/observations:

Pt admitted with 2 weeks of progressive painless jaundice. MRCP without evidence of biliary obstruction. Await hepatitis serologies and autoimmune markers. Pt was also taking a supplement with possible hepatotoxicity. Follow labs and cont supportive care.

59.     The following series of photographs show the extraordinary progression of Weinberg's jaundice, from April 11, 2020 (a few weeks after he started taking Immune Support), to February 2, 2021 (the day before he was admitted to the hospital), to July 10, 2021, several months after stopping taking Immune Support:




# Martin Weinberg - jaundice comparison

Apr 11, 2020–Jul 10, 2021

April 11, 2020    February 2, 2021    July 10, 2021

60.  When Weinberg stopped using Immune Support, his condition improved, though it took several months for his jaundice and other symptoms to clear fully.

61.  Weinberg has unreimbursed medical expenses relating to his hospitalization and treatment.

62.  In addition, as the effects of Immune Support accelerated and accreted, Weinberg suffered from serious gastric distress, acid reflux, exhaustion, and mental and physical lethargy and "fuzziness." He was frequently unable to work or to manage his business because of the effects of Immune Support and was unable to compete for new work to expand his business.

63.  Weinberg may face longer-term complications from the liver damage he has sustained as a result of using Immune Support in accordance with its labelling.

64.  As a direct and proximate result of his use of Immune Support in a manner consistent with its labelling, Weinberg suffered lost productivity, lost work, loss of enjoyment of life, and other injuries.

65.  As of March 28, 2022, Legion Athletics continues to sell Immune Support without making any changes to the product's labelling or marketing materials.

**COUNT 1**
**Violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law,**
**73 P.S § 201-1, *et seq*.**
**(Against Legion Athletics)**

66.   Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

67.   Plaintiff purchased dietary supplements containing African geranium for personal, family, or household purposes within the meaning of 73 P.S. § 201-9.2.

68.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law prohibits engaging in fraudulent or deceptive conduct (i) representing that goods have characteristics, benefits, or qualities that they do not have; (ii) representing that goods or services are of a particular standard, quality, or grade, if they are of another; (iii) advertising goods or services with intent not to sell them as advertised; and (iv) engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding. 73 P.S. § 201-2(4).

69.   Legion Athletics' acts and practices, as alleged in this complaint, violate the Pennsylvania Unfair Trade Practices and Consumer Protection Law by engaging in unfair methods of competition and unfair and deceptive acts and practices in connection with transactions—namely, the sale of the dietary supplements with African geranium without adequate instructions regarding the safe dose of said supplement, or warnings concerning the overconsumption of said dietary supplements. This conduct was intended to result and did result in the sale of these goods to consumers. Specifically, Legion Athletics:

   a.   Represented that dietary supplements with African geranium had characteristics that they did not have;

   b.   Represented that dietary supplements with African geranium were of a particular standard, quality, or grade when they were actually of another;

   c.   Advertised goods or services with intent not to sell them as advertised; and

d.   Engaged in other fraudulent or deceptive conduct creating a likelihood of confusion or misunderstanding.

70.   Legion Athletics' conduct was also deceptive and unfair in that it violated the prohibition against false or misleading labelling and marketing in Pennsylvania's Food Safety Act, 3 Pa. C.S.A. § 5721, *et seq.*

71.   As a direct and proximate result of Legion Athletics' conduct, Plaintiff has been harmed and has suffered ascertainable loss, in that he purchased products that he otherwise would not have had he been given adequate instructions regarding a safe dose. Meanwhile, Legion Athletics has generated more revenue than it otherwise would have, unjustly enriching itself. Legion Athletics' violations also affect the public interest.

72.   Plaintiff is entitled to damages (including treble damages), equitable relief, reasonable attorney's fees and costs, declaratory relief, and a permanent injunction enjoining Legion Athletics from its unlawful, fraudulent, and deceitful activity.

## COUNT 2
**Violations of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*, for Breach of Implied Warranties (Against Legion Athletics)**

73.   Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

74.   Immune Support is a consumer product as defined in 15 U.S.C. § 2301(1).

75.   Plaintiff is a "consumer" as defined in 15 U.S.C. § 2301(3). He is a consumer because he is a person entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

76.   Legion Athletics is a "supplier" and "warrantor" as defined in 15 U.S.C. §§ 2301(4) and (5).

77.     Under 15 U.S.C. § 2310(d)(1), the MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

78.     In connection with its sale of the dietary supplements, Legion Athletics gave an implied warranty of merchantability as defined in 15 U.S.C. § 2301(7). Specifically, Legion Athletics warranted that Immune Support was fit for its ordinary and stated purpose, and would pass without objection in the trade.

79.     Legion Athletics breached the implied warranty of merchantability and thereby violated the MMWA by selling dietary supplements containing African geranium to its customers, including Plaintiff, without adequate instructions regarding safe dosage and/or warnings relating to possible side effects of extended use, endangering his health thereby.

80.     Legion Athletics' breach of warranty has deprived Plaintiff of the benefit of his bargain.

81.     As a direct and proximate result of Legion Athletics' conduct, Plaintiff has suffered damages and continue to suffer damages and other losses in an amount to be determined at trial.

82.     There is privity of contract between Legion Athletics and Plaintiff.

83.     In the alternative, privity is not required because the dietary supplements are dangerous instrumentalities due to the defects and nonconformities outlined herein.

84.     Plaintiff afforded Legion Athletics with a reasonable opportunity to cure its breach pursuant to 15 U.S.C. § 2310.

85.     Plaintiff has been damaged by Legion Athletics' breach of the implied warranty of merchantability and therefore seeks damages, or other legal and equitable relief, and an award of attorneys' fees, costs, and expenses.

1

2

## COUNT 3
### Breach of Implied Warranties
### (Against Legion Athletics)

3

4

86.    Plaintiff repeats and realleges the allegations contained in the paragraphs above,

5

as if fully set forth herein.

6

87.    Legion Athletics is in the business of selling dietary supplements to consumers

7

such as Plaintiff, including, but not limited to, dietary supplement products containing African

8

geranium of the kind sold to Plaintiff.

9

88.    Plaintiff purchased Immune Support, a dietary supplement labeled with African

10

geranium.

11

89.    At all times herein mentioned, Legion Athletics manufactured, tested, advertised,

12

13

promoted, marketed, sold, and/or distributed these dietary supplements.

14

90.    At the time Legion Athletics designed, researched, manufactured, tested,

15

advertised, promoted, marketed, sold, and/or distributed the Immune Support for use by

16

Plaintiff, Legion Athletics knew of the uses for which Immune Support was intended, and

17

impliedly warranted it to be of merchantable quality.

18

91.    Legion Athletics' representations and warranties were false, misleading, and

19

20

deceptive, in that the dietary supplements were not of merchantable quality because the products

21

were defective, would not pass without objection in the trade, were not fit for ordinary purposes,

22

and did not conform to the promises on labeling.

23

92.    Plaintiff did rely on said implied warranty of merchantability.

24

93.    Plaintiff reasonably relied upon the skill and judgment of Legion Athletics as to

25

whether Immune Support was of merchantable quality.

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

94.    Immune Support was injected into the stream of commerce by Legion Athletics despite the fact that it was expected to and did reach users, handlers, and persons coming into contact with the product without substantial change in the condition in which it was sold.

95.    Legion Athletics breached the implied warranties, because Immune Support was defective, could not deliver on the advertised claims, would not pass without objection in the trade, and was not fit for ordinary purposes.

96.    As a direct and proximate result of the breach of implied warranties, Plaintiff suffered and/or will continue to be harmed and suffer economic loss.

97.    Legion Athletics received notice of these issues by communication sent by Plaintiff. It nonetheless continues to sell Immune Support without change to its labelling.

98.    As a direct and proximate result of the foregoing acts and/or omissions, Plaintiff has suffered damages, and is entitled to compensatory damages, costs, and reasonable attorneys' fees.

**COUNT 4**
**Unjust Enrichment or Quasi-Contract**
**(Against Legion Athletics)**

99.    Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

100.   Legion Athletics has unjustly retained a benefit to the detriment of Plaintiff. Legion Athletics sold dietary supplements to Plaintiff that were illegal because they contained African geranium, without adequate instructions regarding safe dosage and/or warnings relating to possible side effects of extended use, endangering his health thereby.

101.   Legion Athletics' retention of this benefit violates the fundamental principles of justice, equity, and good conscience. Through its control of its labels and its sale of affected

dietary supplement products to consumers, Legion Athletics misrepresented that Immune Support and the ingredients contained within were lawful, safe, and effective.

102. As a direct and proximate result of Legion Athletics' conduct, Plaintiff has suffered damages in an amount to be proven at trial.

## COUNT 5
### Negligent Misrepresentation
### (Against All Defendants)

103. Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

104. Defendants had a duty to disclose to Plaintiff the actual quality and characteristics of Immune Support.

105. Defendants negligently and/or carelessly misrepresented, omitted, and concealed from consumers material facts relating to the quality and characteristics of Immune Support, including but not limited to adequate instructions regarding safe dosage and/or warning relating to possible side effects of extended use, endangering the health thereby of consumers including Plaintiff.

106. These misrepresentations and omissions were material and concerned the specific characteristics and quality of its products that a reasonable consumer would consider in purchasing any dietary supplement.

107. Defendants made such false and misleading statements and omissions on its website and product labeling, and in its advertisements and warranties, with the intention of inducing Plaintiff to purchase the products.

108. As a result of Defendants' misstatements, they were under a duty to disclose facts necessary to correct those misstatements. Further, Defendants were in a better position to

discover the misrepresentations than Plaintiff because Defendants controlled the products' design, manufacturing, testing, review, and marketing processes.

109.   At the time they made the representations, Defendants knew, or by the exercise of reasonable care should have known, that the statements were false.

110.   Defendants advertised and marketed Immune Support with the intent to induce Plaintiff to purchase the products.

111.   Defendants knew, or by the exercise of reasonable care should have known, that without the misrepresentations and/or omissions, consumers including Plaintiff would not have purchased Immune Support.

112.   Plaintiff justifiably relied upon Defendants' misrepresentations about Immune Support's quality and characteristics.

113.   Plaintiff was unaware of the falsity of Defendants' misrepresentations and omissions and, as a result, justifiably relied on them in deciding to purchase Immune Support. Had he been aware of the true nature and quality of Immune Support, he would not have purchased it, or would not have consumed the product in the manner he did.

114.   As a direct and proximate result of Defendants' misrepresentations and omissions of material fact, Plaintiff has suffered and will continue to suffer damages and losses as alleged herein in an amount to be determined at trial.

**COUNT 6**
**Negligence Per Se**
**(Against All Defendants)**

115.   Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

116.   Defendants had a duty to investigate and to disclose to Plaintiff the actual quality and characteristics of Immune Support, including a safe dose of the product.

117.   Defendants negligently and/or recklessly failed to investigate, misrepresented, omitted, and concealed from Plaintiff material facts relating to the quality and characteristics of Immune Support, including but not limited to adequate instructions regarding safe dosage and/or warning relating to possible side effects of extended use, endangering his health thereby.

118.   These failures, misrepresentations, and omissions were material and concerned the specific characteristics and quality of its products that a reasonable consumer would consider in purchasing any dietary supplement.

119.   Defendants made such false and misleading statements and omissions on its website and product labeling, and in its advertisements and warranties, with the intention of inducing Plaintiff to purchase the products.

120.   This conduct was in violation of the federal and state statutes cited herein, including but not limited to Pennsylvania's Food Safety Act, 3 Pa. C.S.A. § 5721, *et seq.*

121.   The purpose of the federal and state statutes cited herein is, at least in part, to protect the interest of Plaintiff individually, as opposed to the public, and these statutes clearly apply to Legion Athletics' conduct.

122.   At the time they made the representations, Defendants knew, or by the exercise of reasonable care should have known, that the labelling for Immune Support was false, deceptive, and/or misleading.

123.   Defendants advertised and marketed Immune Support with the intent to induce Plaintiff to purchase the products.

124.   Defendants knew or should have known that without the misrepresentations and/or omissions, Plaintiff would not have purchased Immune Support.

125.   Plaintiff justifiably relied upon Defendants' misrepresentations about Immune Support's quality and characteristics.

126.   Plaintiff was unaware of the falsity of Defendants' misrepresentations and omissions and, as a result, justifiably relied on them in deciding to purchase Immune Support. Had he been aware of the true nature and quality of Immune Support, he would not have purchased it, or would not have consumed the product in the manner he did.

127.   As a direct and proximate result of Defendants' misrepresentations and omissions of material fact and violations of the federal and state statutes cited herein, Plaintiff has suffered and will continue to suffer damages and losses as alleged herein in an amount to be determined at trial.

### COUNT 7
### Negligence
### (Against All Defendants)

128.   Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth herein.

129.   Defendants had a duty to investigate the potential effects of long-term use of African geranium at high daily doses and to adequately warn about the known or likely effects of such use.

130.   Defendants breached this duty by negligently and/or recklessly failing to investigate and to provide adequate instructions regarding safe dosage and/or warning relating to possible side effects of extended use.

131.   Defendants were in a better position to investigate these qualities and characteristics than Plaintiff because Defendants controlled the products' design, manufacturing, testing, review, and marketing processes.

132.   As a direct and proximate result of Defendants' breach of duty as set forth herein, Plaintiff has suffered and will continue to suffer damages and losses as alleged herein in an amount to be determined at trial.

**PRAYER FOR RELIEF**

133.   WHEREFORE, Plaintiff respectfully request the Court grant the following relief against Defendant:

      a.  Awarding actual and special, exemplary, punitive, and/or treble damages as permitted by law, and/or ordering an accounting by Legion Athletics for any and all profits derived by Legion Athletics from the unlawful, unfair, and/or fraudulent conduct and/or business practices alleged herein;

      b.  Ordering an awarding of injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein, and ordering Defendants to engage in a corrective advertising campaign;

      c.  Ordering Defendants to pay attorneys' fees and litigation costs to Plaintiff;

      d.  Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

1                 e.   Such other relief as the Court may deem just and proper.

Respectfully submitted,

**EARP COHN P.C.**

By: _Carol S. Harding_

Carol S. Harding (ID No. 67142)
123 Broad Street, Suite 100
Philadelphia, PA  19109
(215) 963-9520
csharding@earpcohn.com

-and-

Charles C. Weller (not admitted in E.D.Pa.)
CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

Attorneys for Plaintiff Martin Weinberg

TRIAL BY JURY IS DEMANDED.