## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARTIN WEINBERG, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | CASE NO. 2:22-cv-01573-GJP |
| | : | |
| LEGION ATHLETICS, INC., *a Florida* | : | Judge Gerald J. Pappert |
| *corporation*; ET AL., | : | |
| | : | |
| Defendants. | : | |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AGAINST THE INDIVIDUALLY NAMED DEFENDANTS PURSUANT TO FED.R.CIV.P. 12(b)(2) and COUNTS 1, 2, 3, 4 AND 6 PURSUANT TO FED.R.CIV.P. 12(b)(6)

Defendants, Legion Athletics, Inc. (individually, "Legion"), Sean Clouden (also known as "Michael Matthews") (individually, "Matthews"), and the identified members of Legion's Scientific Review Board, Christopher Barakat, Serdar Tuncali, Dr. Joshua Maher, Dr. Brian Grant, Dr. Mike Ruscio, Dr. Tanei Ricks, Dr. Kasey Jo Orvidas, Eugene K. Choi M.D., Tyler Clinard, Dr. Noora Alakulppi, Dr. Aylia Mohammadi, Dennis Bojrab II M.D., Dr. Jessie Hoffman, and Asrtrid Naranjo (together as, "Legion's Scientific Review Board") (collectively, "Defendants"), by and through undersigned counsel, respectfully move this Honorable Court pursuant to Fed.R.Civ.P. 12(b)(2) to dismiss the claims against Matthews and Legion's Scientific Review Board for lack of jurisdiction.  Defendants further move pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss Counts 1, 2, 3, 4 and 6 of Plaintiff's Complaint as well as all claims against Matthews and Legion's Scientific Review Board and submit this Brief in support thereof.

## I.  INTRODUCTION AND PROCEDURAL BACKGROUND

On or about April 22, 2022, Plaintiff instituted the above action, by way of Complaint (Dkt. No. 1), in United States District Court for the Eastern District of Pennsylvania, seeking damages for injuries Plaintiff purportedly sustained after ingesting Legion's Immune Support supplement on a "near-daily basis" starting on or about March 20, 2020. *See* Complaint ¶ 49.  In addition to naming Legion as a Defendant, Plaintiff also named Matthews, President of Legion, and members

of Legion's Scientific Review Board. *See* Complaint. This Court has subject-matter jurisdiction because a federal question is involved.  *See* Complaint ¶ 18. However, this Honorable Court lacks *in personam* jurisdiction over the individually named Defendants, Matthews and Legion's Scientific Review Board.   Moreover, the allegations set forth in Plaintiff's Complaint are insufficient to impose individual liability against Matthews and Legion's Scientific Review Board. *See* Complaint.

Plaintiff's inability to set forth a legally permissible connection in his Complaint between Matthews, Legion's Scientific Review Board, and the issue at bar, is proof that Matthews and Legion's Scientific Review Board have been improperly named defendants to this matter warranting their dismissal.  Additionally, many of Plaintiff's numerous counts against Legion fail as a matter of law and must be dismissed.

## II.    STATEMENT OF FACTS

Plaintiff alleges that Legion sells dietary supplements, including a product called "Immune Support," which Plaintiff claims he purchased on or about March 20, 2020, and "began taking the recommended dosage on a near daily basis."  Complaint ¶¶ 22, 38, 49. Plaintiff avers that he was a viewer of Matthews' Facebook Live video in which Matthews purportedly stated that "the weight of the evidence" supported his claim that "Immune Support may reduce the likelihood of contracting the coronavirus," that the members of Legion's Scientific Board "all had input on the product," that the research behind each of the ingredients is 100 percent transparent," and "that the Scientific Review Board is a 'who's who of the evidence-based fitness space.'" Complaint ¶¶ 32, 36, 38-39.

Plaintiff states that Legion pledged to "Use Ingredients that Are as Safe as Possible… Legion supplements should be as safe as we can make them while getting the job done." Complaint ¶ 24.  Plaintiff cites to an essay on Legion's website where Matthews "asserts that the dietary supplement industry is 'full of misinformation, disinformation, idiots, liars, and hucksters.'" Complaint ¶ 26.

According to Plaintiff, after taking Immune Support, he "began to experience reduced energy and mental and physical lethargy," for several months. Complaint ¶ 50.  However, Plaintiff purportedly relied upon the statements made by Matthews in his Facebook Live video, the product's labeling, Legion's website, and assurances that the product was reviewed by Legion's Scientific Board, which convinced him that these symptoms were not attributable to taking Immune Support. Complaint ¶¶ 49, 52.  Plaintiff alleges that his condition began to worsen approximately ten (10) months after he began taking Immune Support when he developed symptoms of jaundice. Complaint ¶ 53.

According to the Complaint, on or about February 3, 2021, Plaintiff reported to the emergency room and claims that doctors informed him that one of the ingredients in Immune Support, African geranium, can cause jaundice, which was not stated on the labelling or marketing materials. Complaint ¶¶ 55-56.  As a result, Plaintiff filed suit against Legion and the named individual Defendants for the alleged damages he sustained from taking Immune Support.

Plaintiff's claims that pertain to Matthews and Legion's Scientific Review Board are alleged in Counts 5-7 in his Complaint and are all grounded in negligence.  *See* Complaint. Plaintiff lumps together the responsibilities and actions of Legion and the individually named Defendants by filing the above counts against Legion, Matthews and Legion's Scientific Review Board. He alleges that, collectively, Defendants made negligent misrepresentations, Defendants' actions constituted negligence *per se*, and that Defendants committed ordinary negligence.

However, Plaintiff's Complaint is defective as it fails to set forth a claim upon which relief can be granted against the named individuals.  Legion's Scientific Review Board merely reviews articles written by Legion that are posted to Legion's website and no members of the Board have any input or participation pertaining to the products sold by Legion. Additionally, Matthews, as President of Legion, cannot be personally held liable for the claims Plaintiff alleges.

Further, in addition to Counts 5-7, Plaintiff alleges Legion, individually, violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law, the Magnuson-Moss Warranty Act, breached implied warranties, and a received unjust enrichment in Counts 1-4 respectively. The gravamen of Plaintiff's claims in Counts 1-4 stem from allegations of false

advertising, failing to provide adequate instructions for taking Immune Support, defective product, and breach of the implied warranty of merchantability.  However, in Plaintiff's own Complaint, he admits that African geranium has been used "in the treatment of acute bronchitis and other respiratory tract conditions." Complaint ¶ 44.  Plaintiff continues that, "[s]tudies of the use of African geranium have generally focused on its efficacy in treating conditions such as bronchitis and respiratory tract infections. Those studies have generally observed that African geranium is safe to use…" Complaint ¶ 45.  Additionally, Legion's website describes Immune Support as a "100% natural immunity booster that helps prevent sickness, reduces the severity of illness, and speeds up recuperation." https://legionathletics.com/products/supplements/immune-support/.  It further states that, "[m]aintaining a healthy lifestyle is vital if you want to minimize your chances of illness, disease, and dysfunction. First and foremost, that means limiting stress, sleeping and exercising enough, and eating well. Supplementation can help, too, and especially with fighting off respiratory infections like the common cold and flu. That's why we created Immune." *Id*.

III.   **LEGAL ARGUMENT**

    A.   **Standard of Review**

A Rule 12 motion to dismiss tests the sufficiency of a complaint.  Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*

To survive a motion to dismiss, the plaintiff's complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Thus, assessment of the sufficiency of a complaint is "a context dependent exercise" because "[s]ome

claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMS,* 627 F.3d 85, 98 (3d Cir. 2010).

The Court must accept as true all reasonable inferences emanating from the allegations and view those facts and inferences in the light most favorable to the nonmoving party. *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010); *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-291 (3d Cir. 1988). But that admonition does not demand that the Court ignore or discount reality. The Court "need not accept as true unsupported conclusions and unwarranted inferences," *Doug Grant Inc. v. Greater Bay Casino Corp.*, 232 F.3d 173, 183-184 (3d Cir. 2000) (citations and internal quotation marks admitted), and "the tenet that a court must accept as true all of the allegations contained in a compliant is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft,* 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions" (citation omitted).

### B.     This Honorable Court Lacks *In Personam* Jurisdiction Over the Individually Named Defendants – Motion to Dismiss All Claims Against Matthews and Legion's Scientific Review Board

"Although the allegations in the complaint must be accepted as true on a motion to dismiss, the burden of proof remains with the plaintiff to establish the requisite jurisdictional facts through competent evidence such as sworn affidavits." *Fyk v. Roth*, 1995 Westlaw 57487 * 1 (E.D. Pa. Feb. 10, 1995). Unlike a motion under Rule 12(b)(6), a Motion under Rule 12(b)(2) requires more than mere allegations from Plaintiff. Thus, "There is a significant procedural distinction … between these two kinds of motions." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984). Once the motion is made, plaintiff must respond with actual proofs, not mere allegations." *Id*. at 67 n.9.  Plaintiff bears the burden of demonstrating by a preponderance of the evidence that the individual Defendants have sufficient contacts with the forum state to give the Court *in personam* jurisdiction. *See Time Share Vacation Club*, 735 F.2d 61 at 63; *Peek v. Golden Nugget Hotel and Casino*, 806 F. Supp. 555 at 556; *Feingold v. Aronow Powerboats*, 1990

WL 99113*1 (E.D. Pa. July 12, 1990).  In meeting this burden, a plaintiff may not merely rely upon bare pleadings, but must produce competent evidence "establishing with reasonable particularity sufficient contacts between defendant and forum state" such that the exercise of jurisdiction comports with the requirements of due process. *Mellon Bank (East) PSFS Nat. Ass'n v. Farino,* 960 F.2d 1217, 1223 (3d Cir. 1992); *Burke v. Quartev*, 969 F. Supp. 921, 924 (D.N.J. 1997) (citing *Patterson v. FBI*, 893 F. 2d 595, 603-04 (3d Cir. 1997), cert denied, 498 U.S. 812 (1990)); *Time Share Vacation Club*, 735 F.2d. at 66 n.9.  Statements in briefs or allegations in a complaint are "not properly before the Court as 'facts' evidencing contact for jurisdictional purposes." *Peek*, 806 F. Supp. 555, 557-558 (E.D. Pa. 1992).  This burden cannot be met by mere allegations, but only by "sworn affidavits or other competent evidence." *Time Share Vacation Club*, 735 F,2d at 67 n.9; *Feingold*, 1990 WL 99113 at * 1.

There are specific analytical steps the Court must take in determining whether personal jurisdiction can be asserted over a nonresident defendant. Rule 4(e) of the Federal Rules of Civil Procedure is the starting point. This rule "authorizes personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits." *Mellon Bank (East) PSFS, National Association*, 960 F.2d 1217, 1221 (3d Cir. 1992). The forum state in this case is Pennsylvania and its long-arm statute is codified at 42 Pa. Cons. Stat. Ann. § 5322.

Under the Due Process Clause of the Fourteenth Amendment, there are two grounds for a state to exercise personal jurisdiction over a non-resident defendant: "general" jurisdiction, which exists where a defendant maintains continuous and systematic contacts with the forum state; and "specific" jurisdiction where the specific conduct of the defendant gave rise to the cause of action. As explained in *Skinner v. Flymo*, 351 Pa. Super. 234, 239, 505 A.2d 616, 619 (1986):

> Jurisdiction over a non-resident defendant may be based either upon the specific acts of the defendant which gave rise to the cause of action, or upon the defendant's general activity within the forum state. In order for a Pennsylvania court to assert specific jurisdiction, the cause of action must arise out of the defendant's activities within the Commonwealth. General jurisdiction, on the other hand, exists regardless of whether the cause of action is related to the defendant's activities in this Commonwealth as long as the defendant's activities are "continuous and substantial."

The Pennsylvania Long-Arm Statute, 42 Pa. C.S.A. §5301, *et seq*. is the statutory provision which allows Pennsylvania Courts to exercise general personal jurisdiction over nonresidents of Pennsylvania. The Uniform Interstate and International Procedure Act, 42 Pa. C.S.A. §5321, *et seq*. (specifically §5322(b)), is the statutory provision which allows Pennsylvania Courts to exercise specific personal jurisdiction over non-residents of Pennsylvania. Pennsylvania Courts have derived a test under each of these two statutes to determine whether jurisdiction over a non-resident is appropriate.

Regardless of which test is used to impose jurisdiction over the non-resident, both tests must satisfy the due process requirements of the Constitution of the United States described in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). In *International Shoe*, the United States Supreme Court stated that due process requires only that in order for a state to subject a defendant to *in personam* jurisdiction, the defendant must have certain minimum contacts within the state such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'." *Id*. at 316. The Court stated that the satisfaction of due process was dependent on the "quality and nature of the activity in relation to the fair and orderly administration of justice". *Id*. at 319. In *Hanson v. Denckla*, 357 U.S. 235 (1968), the Supreme Court stated that before there could be *in personam* jurisdiction, there must be some act by which a "defendant purposely avails itself of the privilege of conducting activities within the forum state." *Hanson*, 357 U.S. at 253. Pennsylvania cases have consistently followed and adhered to the definition of due process as outlined in *International Shoe* and its progeny. *Bork v. Mills*, 485 Pa. 228, 329 A.2d 247 (1974); *Whalen v. Walt Disney World Co.*, 418 A.2d 389 (Pa. Super. 1980); *Slota v. Moorings, Ltd.*, 343 Pa. Super. 96 494 A.2d at 3.

Here, regardless of the tests utilized, the individual Defendants do not have sufficient contacts to confer personal jurisdiction. Plaintiff's complaint is utterly devoid of any allegations against the individually named Defendants establishing sufficient contacts with the Eastern District of Pennsylvania so as to afford this Honorable Court with jurisdiction over them.   The jurisdictional test under 42 Pa. C.S.A. §5322 for specific personal jurisdiction has three prongs. First, defendant/non-resident must have purposely availed himself/herself/itself of the privilege of

acting within Pennsylvania, thereby invoking the benefits and protection of its laws. Second, the defendant's specific acts in the Commonwealth must have given rise to the cause of action. Third, the acts of the defendant/non-resident must have minimum contacts with Pennsylvania so that the maintenance of a suit does not offend traditional notions of fair play and substantial justice. *Derman v. Wilair Service, Inc.* 404 Pa.Super. 136, 590 A.2d 317 (1991). All prongs of the test must be satisfied for the exercise of jurisdiction.

None of the three prongs of the test apply to the individual Defendants. First, the individuals have not purposefully availed themselves of acting within Pennsylvania. None of the alleged actions in Counts 5, 6, and 7 occurred in Pennsylvania. All of the allegations in Counts 5, 6, and 7 are grounded in negligence based on allegations of a lack of action from the individuals while working at a company that is not incorporated in, and does not maintain a physical presence in, Pennsylvania.   The Complaint specifically alleges that the individuals are all citizens and residents of states and countries other than Pennsylvania including Florida, Arizona, Kansas, Indiana, Nevada, Tennessee, Michigan, Ohio, California, North Carolina, Finland, Canada and Australia.  *See* Complaint, ¶¶ 3 – 17.   The Complaint is devoid of any factual allegations establishing that the individual Defendants purposely availed themselves of the privilege of acting within the Commonwealth or that they performed any acts within the Commonwealth that gave rise to Plaintiff's claims.   Therefore, the first and second prongs of the test are not met.

The final prong of this test requires that the non-resident have a substantial enough connection with Pennsylvania such that an exercise of jurisdiction over it is reasonable. It is well established that "random, fortuitous or attenuated contacts" between the defendant and the forum state will not support an exercise of jurisdiction. *Fidelity Leasing, Inc. v. Limestone County Bd. of Educ.*, 758 A.2d 1207, 1211 (Pa. Super. 2000).   The Complaint fails to even allege fortuitous or attenuated contacts with Pennsylvania, let alone definitive substantial contacts.   Here, the exercise of specific personal jurisdiction over the individual Defendants, having no contacts with Pennsylvania related to Plaintiff's claims, would be unreasonable and unfair. The individuals have no contacts with Pennsylvania which would provide a reasonable basis for a Pennsylvania court to exercise jurisdiction over it.

If jurisdiction is not appropriate after applying this test under 42 Pa.C.S.A. Sec. 5322, then the second test is applied under 42 Pa.C.S.A. Sec. 5301 to see if there is general personal jurisdiction. In contrast to specific *in personam* jurisdiction, general personal jurisdiction is based upon the defendant's general activity within the forum state. *Derman*, 590 A.2d at 323. Under this test, jurisdiction can be asserted only if the defendant/non-resident's activities within Pennsylvania, although unrelated to the cause of action, are "continuous and substantial". *Slota*, 494 A.2d at 4. If the non-resident's activities are not of this type, then personal jurisdiction does not exist. *Slota*, 494 A.2d at 4. Since the Court lacks specific personal jurisdiction in this case, it will only be allowed to exercise jurisdiction if Plaintiff can prove that the moving Defendants' actions, unrelated to the cause of action declared upon, are continuous and substantial so as to create general personal jurisdiction. *Slota*, 494 A.2d at 5-6.

Plaintiff's Complaint is wholly bereft of any such showing. There simply exists no evidence, nor could any evidence be obtained through discovery, which would demonstrate any relationship with the Commonwealth of Pennsylvania by the individual Defendants, much less a long and continuous one. Nor would it produce any evidence that the individual Defendants undertook any professional or personal activities related to or focused in Pennsylvania.

Plaintiff's allegations against the individual Defendants all pertain to allegations of negligent misrepresentations on the packaging of Immune Support and on Legion's website which purportedly constitute negligence *per se*, and that the individual Defendants committed ordinary negligence. None of these allegations stem from any contact by the individuals in Pennsylvania.

Consequently, there are simply no contacts to support a finding of personal or general jurisdiction over the individual Defendants. Therefore, for all the foregoing reasons, this Court must decline the exercise of jurisdiction over the individual Defendants and dismiss the claims against them found in Counts 5, 6, and 7.

C.     **In the Alternative, The Claims Against The Identified Individual Defendants Should Be Dismissed Because They Cannot Be Liable For Acts of Nonfeasance – Motion to Dismiss All Claims Against Matthews and Legion's Scientific Review Board**

As a threshold matter, Legion's Scientific Review Board merely reviews articles that are posted on Legion's website by Legion's writers. They have no involvement in Legion's products let alone the responsibilities that Plaintiff alleges. However, assuming *arguendo* that Legion's Scientific Review Board and Mathews had some responsibility for the formulation and labeling of Immune Support as alleged in Plaintiff's Complaint, they are still shielded from liability under Pennsylvania's Participation Theory.

In Pennsylvania, individual officers of a corporation cannot be held liable for the corporation's negligence unless they took part in the commission of the tort. *See Wicks v. Milzoco Builders Inc.*, 503 Pa. 614, 621-22, 470 A.2d 86, 90 (1983). The Court in *Wicks* stated:

> The general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefore; but that *an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such a tort*, nor for the acts of other agents, officers or employees of the corporation in committing it, unless he specifically directed the particular act to be done or participated, or cooperated therein.
>
> .      .      .
>
> … Liability under this theory attaches only where the corporate officer is an actor who participates in the wrongful acts. Therefore, corporate officers may be held liable for misfeasance [but not for mere nonfeasance].

*Id.* (emphasis added); *see also Brindley v. Woodland Village Rest., Inc.*, 652 A.2d 865, 870 (Pa. Super. 1995) ("…find[ing] it persuasive that the theory of piercing the corporate veil, which is closely related to the participation theory, is imposed cautiously in Pennsylvania; in fact, there is a presumption against apply it.")

The participation theory of individual liability is strictly recognized in Pennsylvania. *Wicks*, 503 Pa. 614, 470 A.2d 86 (1983); *Moore v. Johnson & Johnson*, 907 F. Supp. 2d 646, 663 (E.D. Pa. 2012); *Sherfey v. Johnson & Johnson*, 2014 U.S. Dist. LEXIS 10690, 2014 WL 715518, at *6 (E.D. Pa. Jan. 29, 2014); *Brindley*, 438 Pa. Super. 385, 652 A.2d 865 (1995); *Village at Camelback Property Owners Ass'n v. Carr*, 371 Pa. Super. 452, 538 A.2d 528, 533 (1988), aff'd 524 Pa. 330, 572 A.2d 1 (1990). Under the participation theory, an agent can be personally liable

for his own "misfeasance," i.e., the "improper performance of an act," but not for mere "nonfeasance," i.e., "the omission of an act which a person ought to do." *Brindley,* 652 A.2d 865, 868.

*To wit,* in *Zaborowski v. Hospitality Care Ctr. Of Hermitage, Inc.,* 2002 Pa. Dist. & Cnty. Dec. LEXIS 169 (Pa. County Ct. 2002), Zaborowski, like Plaintiff here, argued that since the officers and directors were ultimately in charge of the facility, they should be held liable for the negligence of the corporation.  There, Zaborowski brought a survival action and a wrongful death action against a nursing home, Hospitality Care Center, the management company in charge of the center's day-to-day operation, and its two directors pursuant to the participation theory of liability. Plaintiff argued that Hospitality's directors were directly liable as they negligently and wrongfully hired the nursing home management company and failed to adequately supervise its management and practices in the provision of quality care.

In essence, the Plaintiffs alleged that because the directors were in sole control of the facility, they were responsible for the poor care provided and therefore liable in damages. Defendant officers and directors collectively filed preliminary objections in the nature of a demurrer on counts of negligence, negligence per se, liability pursuant to *respondeat superior*, fraud, and wrongful death, on the basis that they could not be held personally liable since the alleged actions were taken by them in their capacity as directors and officers of Hospitality Care, a corporate entity.

The trial court judge sustained their preliminary objections. In reviewing the allegations, the judge noted that "[t]here are no allegations that either…[director] took actions separate from the actions each took as corporate officers of Hospitality or took personal steps to engage in negligent conduct." *Id.* at *10. Thus, the court found that the Plaintiff could not support an action for negligence.

Here, Plaintiff fails to set out material, relevant, well-pleaded facts which, if true, state a claim against the identified individual Defendants upon which relief may be granted. The identified individual Defendants are agents of the corporation and Plaintiff's Complaint fails to set forth how and in which specific instances Matthews and Legion's Scientific Review Board took

actions separate from the actions each took while working on behalf of Legion. A review of Plaintiff's Complaint demonstrates that there are no factual allegations that directly or inferentially suggest that the individual Defendants directly participated in the alleged wrongful acts as all of Plaintiff's claims amount to nonfeasance.

The mere recitation that Legion made negligent misrepresentations on the packaging of Immune Support and on Legion's website which purportedly constitute negligence *per se*, and that the individual Defendants committed ordinary negligence, without further factual enhancement as to their direct involvement, is nothing more than a formulaic, unsupported assertion that is legally insufficient to permit Plaintiff's cause of action on the participation theory to proceed.  To hold otherwise, of course, would serve to make the theory of corporate entity useless. Matthews' and Legion's Scientific Review Board's position as corporate agents cannot, in and of itself, lead to imposing personal liability for the alleged negligence. *See Chester-Cambridge v. Rhodes*, 346 Pa. 427, 31 A.2d 128 (1943); *Zaborowski*, No. 3003-1188, 2002 Pa. Dist., & Cnty. Dec. Lexis 169, at *11.

The critical distinction is between nonfeasance, the omission of an act which a person ought to do, and misfeasance, the improper performance of an act.  *Wicks,* 470 A.2d, at 90. The specific indirect acts which Plaintiff avers, are bald attempts to transmute allegations of nonfeasance into allegations of misfeasance, and like mere allegations of nonfeasance, are insufficient as a matter of law to establish individual liability. *See Wicks,* 470 A.2d, at 90.

The allegations against the identified individual Defendants are clearly allegations of failures to act, i.e., nonfeasance. Further, there is no basis to support a theory that they actively took part in any wrongful act, i.e., misfeasance.  Accordingly, the claims against Matthews and Legion's Scientific Review Board must be dismissed.

     i.    **The Participation Theory Applies To Matthews And Legion's Scientific Review Board**

The participation theory is not limited in scope to corporate agents, officers, or directors. "Although *Wicks* involved corporate officers, the intermediate Pennsylvania appellate courts, as well as federal courts applying Pennsylvania law, have applied the participation theory to ordinary

employees as well." *Smoyer v. Care One, LLC*, No. 16-1696, 2017 U.S. Dist. LEXIS 9704, 2017 WL 575070, at *5 n.7 (W.D. Pa. Jan. 23, 2017).

In *Kane v. Wal-Mart Stores E., LP,* No. 18-5285, 2018 U.S. Dist. LEXIS 217772 (E.D. Pa. Dec. 31, 2018), while applying Pennsylvania law, the court refused to impose individual liability against the manager of a Wal-Mart for claims of failing to act in training employees. *See also*, *Aldorasi v. Crossroads Hosp. & Mgmt. Co., LLC*, 2018 U.S. Dist. LEXIS 163903, *16-17 (E.D. Pa. Sept. 25, 2018) (defendant's general manager and director of engineering were shielded by the participation theory against individual claims of various allegations of negligence); *Jackson v. Burlington Coat Factory*, 2017 U.S. Dist. LEXIS 131233, *11 (E.D. Pa. Aug. 17, 2017) (a negligence claim against a store manager was not colorable where the complaint alleged the manager was responsible for the store's conditions on which plaintiff was injured, but faulted the manager only for actions he failed or omitted to take).

The scope of the participation theory extends to owners of businesses as well. In *Brindley*, the Superior Court refused to recognize the individual liability of owners of a restaurant when faced with a negligence claim regarding the safety of the restaurant's bathroom was raised in a slip and fall case. 652 A.2d, at 869-70; *see Hager v. Etting,* 268 Pa. Super. 416, 408 A.2d 856 (1979) (holding same).

Here, the allegations against Legion's Scientific Review Board for Plaintiff's various claims of negligence, which amount to acts of nonfeasance clearly are within the purview of the participation theory. *See*, *Kane,* No. 18-5285, 2018 U.S. Dist. LEXIS 217772 (E.D. Pa. Dec. 31, 2018); *Aldorasi*, 2018 U.S. Dist. LEXIS 163903, *16-17 (E.D. Pa. Sept. 25, 2018); *Jackson*, 2017 U.S. Dist. LEXIS 131233, *11 (E.D. Pa. Aug. 17, 2017). Additionally, allegations of Matthews' actions of nonfeasance as President of Legion are also within the purview of the participation theory. *Brindley*, 652 A.2d, at 869-70; *Hager*, 268 Pa. Super. 416, 408 A.2d 856 (1979). Consequently, the individual Defendants in Plaintiff's Complaint are all within the purview of the participation theory considering their roles at Legion. Therefore, the claims against Matthews and Legion's Scientific Review Board must be dismissed.

**D.**     **Plaintiff Fails To State A Cognizable Claim Under Pennsylvania's Food Safety Act – Motion to Strike Paragraph 70**

Plaintiff's claim in paragraph 70 of the Complaint that Legion violated the prohibition against false or misleading labelling and marketing under Pennsylvania's Food Safety Act, 3 Pa. C.S.A. § 5721, *et seq*. is not cognizable.  Section 5721 of Pennsylvania's Food Safety Act is the short title of Subchapter B titled Food Safety. Within Subchapter B, is the applicable subsection pertaining to Plaintiff's allegations for misbranding of food. *See* Complaint ¶ 70. 3 Pa. C.S.A. § 5729(a) states that a food shall be misbranded, "(1) if its labeling is false or misleading in any way."

Marketing is not present in Subchapter B in any way. Consequently, Plaintiff's allegation in ¶ 70 of his Complaint must only pertain to false or misleading labelling of Immune Support as marketing is not contemplated within this Subchapter, let alone in Plaintiff's cited subsection. 3 Pa. C.S.A. § 5729(a) includes twelve (12) subsections where Pennsylvania's Food Safety Act deems food misbranded. However, the section does not create civil private rights of action for its violation.  In the "Food Safety" section of the Pennsylvania Department of Agriculture's website for complaints, the website explains, "[i]f your complaint is regarding a packaged food purchased, and is specific to that food product, such as an issue with labeling information, a foreign object found inside the package, or other obvious manufacturing defect, those complaints should be directed         to         the         PDA         for         investigation."         *See*, https://www.agriculture.pa.gov/consumer_protection/FoodSafety/Pages/Food-Safety-Complaints.aspx.

3 Pa.C.S.A. §5725(b) explains that "the secretary may assess a civil penalty not to exceed $10,000 upon an individual or business for each offense." *See also* §5726(a) ("Whenever the secretary has probable cause to believe that food is adulterated or misbranded, the secretary shall affix to the container or wrapping a tag or other marking.")  Therefore, it is abundantly clear that Pennsylvania's Food Safety Act does not permit a civil private right of action and Plaintiff impermissibly filed this claim against Legion.

**E.     Plaintiff Fails To State A Cognizable Claim For Unjust Enrichment – Motion to Dismiss Count 4**

Unjust enrichment is not applicable where the relationship between the parties is based upon an express agreement. *Mitchell v. Moore*, 729 A.2d 1200 (Pa. Super., 1998); *Birchwood Lakes Community Ass'n, Inc. v. Comis*, 442 A.2d 304 (Pa. Super., 1992); *Johnson v. Marrs*, 2004 Phila. Ct. Com. Pl. Lexis 109 (2004) (if there is an express contract between the parties, there is no claim for unjust enrichment); *Abrams v. Toyota Motor Credit Corp.*, 2001 Phila. Ct. Com. Pl. Lexis 83 (2001) (a Court may not make a finding of unjust enrichment where an express contract exists).

Pennsylvania Courts are loath to apply doctrines of quasi-contract when liability can be ascertained using contract law principles. *See*, *Lobar, Inc. v. Lycoming Masonery, Inc.*, 2005 Pa. Super. 201 (June 1, 2005). Unjust enrichment is a quasi-contract doctrine based in equity. *Abrams*, 2011 Phila. Ct. Com. Pl. 83, at 85. Implied or quasi-contracts are presumed where no proper contract exists, and it is necessary to account for a relationship between the parties. *Id.*

In *Lobar*, the Pennsylvania Superior Court refused to apply principles of quasi-contract or unjust enrichment because the question of liability could be decided upon contract principles. *Lobar*, 2005 Pa. Super. 201, ¶ 9 (citing *Hedden v. Lupinski*, 176 A.2d 406 (Pa., 1962)). The court reasoned that where contract principles can establish the defendant's liability, quasi-contract principles are not applicable. *Lobar*, 2005 Pa. Super. 201, ¶ 13.

Quasi-contract and unjust enrichment principles are not applicable to the instant matter as Plaintiff's Complaint expressly avers that he purchased a product from Legion. Under 13 Pa.C.S. § 2204(a), "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." In fact, Plaintiff relies upon this notion in Count 2 of his Complaint where he states that "[t]here is privity of contract between Legion Athletics and Plaintiff." Complaint ¶ 82.

As in *Birchwood*, *Mitchell*, and *Abrams*, to establish a claim for unjust enrichment, Plaintiff must allege and demonstrate the absence of an express contract. Having alleged an express

agreement, Plaintiff cannot not now ask the Court or factfinder to imply the existence of a contract that is separate and different from the one that has already been established.

Additionally, in his claim for unjust enrichment, Plaintiff erroneously alleges the sale of Immune Support to Plaintiff was illegal. Complaint ¶ 100. There is no basis for this allegation whatsoever and this claim is wholly vexatious. Hence, Plaintiff fails to state a claim for unjust enrichment and Count 4 of the Complaint must be dismissed.

### F. The Legislative History Of The UTPCPL And The Plain language Of The Act Demonstrates That Subsections (v), (vii), And (xxi) Pertain To Transaction Discussions And Not Advertisements – Motion to Dismiss Count 1

Plaintiff's Complaint alleges violations of subsections (v), (vii), (ix), (xxi) of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). *See*, Complaint ¶ 69(a)-(d); 73 P.S. §201-2(4). However, only subsection (ix) pertains to advertising while subsections (v), (vii), and (xxi) prohibit behavior which occurs during transactional discussions.  All of Plaintiff's claims are premised upon advertising, as that term is understood under the UTPCPL.

Prior to the adoption of the Consumer Protection Law ("CPL"), individual consumers who had been victimized in the marketplace by vendors could vindicate their rights only under the common law theories of negligent and fraudulent misrepresentation. Against this backdrop, Pennsylvania's General Assembly passed the CPL in 1968. The intent of the General Assembly was "to benefit the public at large by eradicating, among other things, 'unfair or deceptive' business practices." *Commonwealth by Creamer v. Monumental Props., Inc.*, 459 Pa. 450, 457, 329 A.2d 812, 815 (1974). To this end, the CPL recognized "the unequal bargaining power of opposing forces in the marketplace" and "attempt[ed] to place on more equal terms seller and consumer." *Id.* at 816.

While Section 201-2(4) of the CPL enumerates twenty distinct unfair methods of competition and unfair or deceptive acts and practices that are unlawful, the legislature also included the catch-all provision in Section 201-2(4)(xxi). In 1996, the General Assembly expanded the unlawful conduct barred by the catch-all provision so as also to prohibit deceptive conduct.

The resulting iteration bars "engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi) (1996).

With the intent of the legislature in mind, when interpreting legislative enactments, "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). "The best indication of legislative intent is the plain language of the statute." *Kistler v. Commonwealth, State Ethics Comm'n*, 610 Pa. 516, 22 A.3d 223, 227 (Pa. 2011). To accomplish this, the court considers the statutory language at issue not in isolation, but in the context in which it appears. *Commonwealth v. Kingston*, 636 Pa. 438, 143 A.3d 917, 922 (Pa. 2016); *see also Rossi v. Commonwealth*, 580 Pa. 238, 860 A.2d 64, 66 (Pa. 2004) ("[I]ndividual statutory provisions must be construed with reference to the entire statute of which they are a part[.]")

"When the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent." *Chanceford Aviation v. Chanceford Twp. Bd. of Supervisors*, 592 Pa. 100, 923 A.2d 1099, 1104 (Pa. 2007) (quotations omitted). "Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition." 1 Pa.C.S. § 1903(a).

Here, the statutory provisions at issue are part of section 2 of the UTPCPL, which contains the definitions of terms used therein. *See* 73 P.S. § 201-2. Subsection (4) of section 2 defines "unfair methods of competition" and "unfair or deceptive acts or practices" in twenty-one enumerated subparts.

Plaintiff's Complaint alleges violations of subsections (v), (vii), (ix), (xxi). *See*, Complaint ¶ 69(a)-(d); 73 P.S. §201-2(4). Although the subsections are not specifically referenced, the language of the Complaint clearly comports to each corresponding subsection.  The question of what conduct is prohibited by subsections (v), (vii), (ix), and (xxi) of the UTPCPL is a matter of statutory interpretation, the rules of which are cited *supra*.

Subsection (v) is alleged as ¶ 69(a) of Plaintiff's Complaint. Subsection (v) prohibits

conduct "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have." 73 P.S. § 201-2(4)(v). Subsection (vii) is alleged in ¶ 69(b) of Plaintiff's Complaint. It prohibits representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another. 73 P.S. § 201-2(4)(vii). Subsection (ix) is alleged in ¶ 69(c) in Plaintiff's Complaint. It prohibits advertising goods or services with intent not to sell them as advertised. 73 P.S. § 201-2(4)(ix). Subsection (xxi) is alleged in ¶ 69(d) of Plaintiff's Complaint. It prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi).

In subsections (ix) and (x), the General Assembly expressly addresses "advertising." 73 P.S. § 201-2(4)(ix)-(x). Unlike subsections (ix) and (x), subsections (v), (vii) and (xxi) fail to employ the term "advertising." Despite subsection (xxi) being viewed as a "catchall" provision, the Pennsylvania Supreme Court held that this specific distinction cannot be ignored, and it cannot be interpreted in such a way as to eliminate this distinction. *Commonwealth v. Golden Gate Nat'l Senior Care LLC*, 648 Pa. 604, 633, 194 A.3d 1010, 1028 (2018) *citing* 1 Pa.C.S. § 1921(b); *Halko v. Bd. of Dirs. of Sch. Dist. of Foster Twp.*, 374 Pa. 269, 97 A.2d 793, 794 (Pa. 1953) (providing that a court may not rewrite a statute when interpreting it).

The court explained that,

> "Subsection (v) prohibits "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have[,]" and subsection (xxi) prohibits "[e]ngaging in any other fraudulent or deceptive conduct" that is likely to cause confusion or misunderstanding. 73 P.S. § 201-2(4)(v), (xxi). It is clear that the terms "representing" and "engaging in any other fraudulent or deceptive conduct" encompass activities other than "advertising," as that phrase has been interpreted under the Lanham Act in *Synthes* and *Seldon*. This is evidenced by the General Assembly's use of different terms."

*Golden Gate Nat'l Senior Care LLC*, 648 Pa. 604, 633, 194 A.3d 1010, 1028 (2018). *To wit*, subsection (vii) should be interpreted in accordance with the interpretation quoted *supra* as it too does not include any reference to advertising. *See id*; 73 P.S. § 201-2(4)(vii).

18

Excluding the subsections, other than (ix) and (x), from advertising claims is consistent with Pennsylvania jurisprudence as these sections pertain to transactional discussions, this interpretation is consistent with the General Assembly's legislative intent and is consistent with the plain meaning of the statute. In *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 648 (Pa. 2021), the Pennsylvania Supreme Court greatly expanded what constitutes deceptive conduct by interpreting subsection (xxi) as including "any deceptive conduct, "which creates a likelihood of confusion or of misunderstanding." *Gregg*, 245 A.3d 637, 650 (Pa. 2021). *Gregg* pertained to a suit against a financial advisor for representations made by the financial advisor during a transactional negotiation. *Id* at 640.

When discussing the context of the transaction and the legislative intent of the UTPCPL, the court explained that,

> "[t]he [CPL] is for consumer protection. It undoes the ills of sharp business dealings by vendors, who, as here, may be counseling consumers in very private, highly technical concerns. Like the Greggs, those consumers may be especially reliant upon a vendor's specialized skill, training, and experience in matters with which consumers have little or no expertise."

*Gregg*, 245 A.3d 637, 650 (Pa. 2021). Evidently, the subsections of section 2 of the UTPCPL pertain to dealings when not explicitly mentioning advertising. *See* 73 P.S. § 201-2.

The General Assembly knows well how to add a requirement to a statute. The absence of any reference to advertisements in the catchall provision of subsection (xxi) demonstrates that the legislature did not intend to include advertising. 73 P.S. § 201-2(4)(xxi). "[W]here a section of a statute contains a given provision, the omission of such a provision from a similar section is significant to show a different legislative intent." *Fletcher v. Pa. Prop. & Cas. Ins. Guar. Ass'n*, 603 Pa. 452, 985 A.2d 678, 684 (Pa. 2009). It is not for the courts to add terms to a statute where the legislature did not choose to do so. *See Commonwealth v. Rieck Inv. Corp.*, 419 Pa. 52, 213 A.2d 277, 282 (Pa. 1965) (courts should not add to a statute a requirement that the legislature chose not to include).

Therefore, Plaintiff's claims in ¶¶ 69(a)-(b), (d) are not cognizable as there was no transactional negotiation where any violation of the UTPCPL could have occurred.  To the

contrary, Plaintiff's claims are based upon Legion's advertising of its product and alleged failure to include warnings or instructions on its labelling.   As such, Plaintiff's claims for alleged violations of the UTPCPL found in ¶¶ 69(a)-(b) and (d) should be dismissed by this Honorable Court.

### i.       Legion Has Not Engaged In False Advertising

Consequently, Plaintiff's remaining claim in Count 1 is for a claim under 73 P.S. § 201-2(4)(xi). A claim brought pursuant to Section 201-2(4)(ix) is akin to a claim for false advertising and focuses on the seller's intention of not selling the product as advertised. *Lebourgeois v. Firstrust Sav. Bank*, 22 Phila. 223, 238 (1991) *citing Gabriel v. O'Hara*, 368 Pa.Super. 383, 394 n.14, 534 A.2d 488, 494 n.14 (1987). Section 201-2(4)(ix) prohibits advertising "goods or services with intent not to sell them as advertised." 73 P.S. § 201-2(4)(xi).

To state a claim for false advertising under subsection (ix), a plaintiff must demonstrate that "(1) that defendant['s] advertisement is a false representation of a fact, (2) that it actually deceives or has a tendency to deceive a substantial segment of its audience, and (3) that the false representation is likely to make a difference in the purchasing decision." *Tesauro v. Quigley Corp.*, 2001 Phila. Ct. Com. Pl. LEXIS 73, *5-6. The plaintiff must also show that they suffered an ascertainable loss of money or property as a result of the false advertisements. 73 P.S. § 201-3.

"[P]uffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language." *Golden Gate Nat'l Senior Care LLC*, 158 A.3d 203, 215 (Pa. Commw. 2017). Where the impression created by the statement is one of exaggeration or overstatement expressed in broad language, it may be deemed non-actionable puffery. *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993). There are two basic categories of "puffing" statements.

The first involves hyperbolic boasting or bluster that no reasonable consumers would believe to be true; for example, a statement that a weight loss product will cause the pounds to "melt away in the blink of an eye." *See* 5 McCarthy on Trademarks and Unfair Competition § 27:38 (5th ed.). The second category involves claims of superiority over a competitor's product, *id.*, such as statements that a laboratory imaging device provided "unprecedented clarity," or the advertisement of a product as "the complete sports drink." *See Cytyc Corp. v. Neuromedical*

*Systems, Inc.*, 12 F.Supp.2d 296, 300-01 (D. Neb. 1995); *Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510, 526 (S.D. N.Y. 2003). "A salient characteristic of statements deemed to be "puffery" is that consumers understand that the statements are not to be taken literally." *Golden Gate Nat'l Senior Care LLC*, 648 Pa. 604, 626 (Pa. Commw. 2017). This is because the law presumes that:

> "[t]here are some kinds of talk which no sensible man takes seriously, and if he does he suffers from his credulity. If we were all scrupulously honest, it would not be so; but, as it is, neither party usually believes what the seller says about his own opinions, and each knows it. Such statements ... are rather designed to allay the suspicion which would attend their absence than to be understood as having any relation to objective truth."

*Golden Gate Nat'l Senior Care LLC*, 648 Pa. 604, 626, 194 A.3d 1010, 1023-24 (2018) *quoting Alpine Bank v. Hubbell*, 555 F.3d 1097, 1106 (10th Cir. 2009) (quoting *Vulcan Metals Co. v. Simmons Mfg. Co.*, 248 F. 853, 856 (2d Cir. 1918)).

It is these characteristics—the patently hyperbolic or excessively vague character that dissuades any reasonable consumer from placing reliance thereon as fact—that render puffery non-actionable under the UTPCPL. *Id*. Determination of whether a statement is puffery requires consideration of the overall impression of the statement and the context in which it is made. *Commonwealth v. Peoples Benefit Servs.*, 923 A.2d 1230, 1236 (Pa. Cmwlth. 2007).

Here, Plaintiff stated that Legion pledges to "Use Ingredients that Are as Safe as Possible…Legion supplements should be as safe as we can make them while getting the job done." Complaint ¶ 24. Plaintiff alleges that, "[i]n an essay on the Legion Athletics website, Matthews asserts that the dietary supplement industry is 'full of misinformation, disinformation, idiots, liars, and hucksters." Plaintiff's Complaint ¶ 26. Plaintiff continues that, "Matthews claims that the Scientific Review Board is a 'who's who of the evidence-based fitness space.'" Plaintiff's Complaint ¶ 32. Lastly, Plaintiff alleges that Matthews, in a Facebook Live video stated that "'the weight of the evidence' supported his claim that a new Legion Athletics product called Immune Support 'may reduce the likelihood of contracting this coronavirus…" Plaintiff's Complaint ¶ 38.

Plaintiff's allegations of false advertisement clearly amount to puffery on behalf of Legion. None of the statements allegedly made by Legion included in Plaintiff's Complaint constitute false

advertisement. Legion's marketing materials are patently hyperbolic. The average consumers understand that these statements are not to be taken literally and none constitute the drastic action of deeming them violations of the UTPCPL.

Therefore, Plaintiff's claim of false advertising under 73 P.S. § 201-2(4)(xi) must be dismissed as the marketing material clearly is based in puffery.

### G.   Legion Did Not Breach Any Implied Warranties – Motion to Dismiss Counts 2 and 3

Under the Magnuson-Moss Warranty Act ("MMWA"), a consumer who is damaged by the failure of a supplier or warrantor to comply with any obligation under an implied warranty may bring suit for damages. 15 U.S.C. § 2310(d). Pursuant to 15 U.S.C. § 2301(7), the term "implied warranty" means an implied warranty arising under State law in connection with the sale by a supplier of a consumer product. The MMWA effectively transforms breaches of implied warranties under State law into a violation of federal law. https://www.ftc.gov/tips-advice/business-center/guidance/businesspersons-guide-federal-warranty-law.

Consequently, "[t]he MMWA provides a private right of action in federal court for consumers who are 'damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation . . . under a written warranty, [or] implied warranty.'" *Guardavacarro v. Home Depot*, No. 16-8796, 2017 U.S. Dist. LEXIS 124737, 2017 WL 3393812, at *9 (D.N.J. Aug. 8, 2017) (quoting 15 U.S.C. § 2310(d)(1)).

As such, Plaintiff's claim in Count 3 of his Complaint for a breach of implied warranties under Pennsylvania law is effectively the same claim for a violation of the MMWA as alleged in Count 2. Plaintiff claims Legion gave an implied warranty of merchantability that warranted "Immune Support was fit for its ordinary and stated purpose, and would pass without objection in the trade." Plaintiff's Complaint ¶ 78. Plaintiff continued that Legion breached the implied warranty of merchantability by selling products "without adequate instructions regarding safe dosage and/or warnings relating to possible side effects..." Plaintiff's Complaint ¶ 79.

In Pennsylvania, implied warranties are implied by law to protect buyers from loss where goods purchased are below commercial standards or unfit for the buyer's purpose, or from the sale

of commercially defective goods. *Turney Media Fuel, Inc. v. Toll Bros., Inc.*, 725 A.2d 836, 840 (Pa. Super. 1999); *see also* 13 Pa.C.S. 2314, 2315. Pursuant to the Pennsylvania Commercial Code ("PCC"), where the seller of goods at the time of contracting has reason to know of any particular purpose for which the goods are required and the buyer is relying on the skill or judgment of the seller to select or furnish suitable goods there is an implied warranty the goods shall be fit for such purpose. 13 Pa. C.S.A. § 2315.

In order to recover for a breach of implied warranty of merchantability, a plaintiff must show that the seller was a merchant with respect to goods of that kind and that the goods were not merchantable at the time of sale. *Solan v. DaimlerChrysler Corp.*, 2002 Phila. Ct. Com. PI. LEXIS 34, *21-22 (Pa. Com. PI. 2002) (citing 13 Pa.C.S. 2314). Pursuant to Section 2314 of the PCC, goods are considered merchantable if they:

> (1) pass without objection in the trade under the contract description; (2) in the case of fungible goods, are of fair average quality within the description; (3) are fit for the ordinary purposes for which such goods are used; (4) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; (5) are adequately contained, packaged, and labeled as the agreement may require; and (6) conform to the promises or affirmations of fact made on the container or label if any.

13 Pa.C.S. 2314(b).

The Supreme Court of Pennsylvania explained that

> "the concept of merchantability does not require that the goods be the best quality, … or the best obtainable, … but it does require that they have an inherent soundness which makes them suitable for the purpose for which they are designed, … that they be free from significant defects, that they perform in the way that goods of that kind should perform, . . . and that they be of reasonable quality within expected variations and for the ordinary purpose for which they are used."

*Gall v. Allegheny County Health Department*, 555 A.2d 786, 789-90 (Pa. 1989) (internal citations omitted). Accordingly, to establish a breach of implied warranty of merchantability, plaintiffs must show that the product they purchased from the defendant was defective. *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992); *see also Grant v. Bridgestone/Firestone, Inc.*, 57 Pa. D. & C.4th 72, 83 (Pa. Com. PI. 2002) (a breach of implied warranty of merchantability

theory in Pennsylvania states that a merchant is only liable for harm caused by a defect in their product) (citing *Thomas v. Carter-Wallace Inc.*, 27 D. & C.4th 146, 149 (Pa. Com. Pl. 1994), aff'd,673 A.2d 412 (Pa. Super. 1995).

Here, Plaintiff's Complaint avers that Legion's "dietary supplements were not of merchantable quality because the products were defective, would not pass without objection in the trade, were not fit for ordinary purposes, and did not conform to the promises on labeling." Complaint ¶ 91. However, Plaintiff's claims are unsubstantiated and fail to sustain a cause of action because, as his own Complaint states, "African geranium extracts has generally been judged to be safe for short-term use of up to seven days in the treatment of acute bronchitis and other respiratory tract conditions." Complaint ¶ 44.

Legion's website describes Immune Support as a "100% natural immunity booster that helps prevent sickness, reduces the severity of illness, and speeds up recuperation." https://legionathletics.com/products/supplements/immune-support/. It further states that, "[m]aintaining a healthy lifestyle is vital if you want to minimize your chances of illness, disease, and dysfunction. First and foremost, that means limiting stress, sleeping and exercising enough, and eating well. Supplementation can help, too, and especially with fighting off respiratory infections like the common cold and flu. That's why we created Immune." *Id*.

Wholly absent from Plaintiff's Complaint is any allegation that Immune Support was missing its stated ingredients, was below commercial standards, or unfit for the purpose of helping to prevent sickness. In fact, Plaintiff's own Complaint provides evidence to the contrary when stating the benefits of African geranium. *See* Complaint ¶ 44. Consequently, Plaintiff's bald assertions for the breach of implied warranties clearly fails by citing to his own Complaint. Additionally, Legion's website explains that maintaining a healthy lifestyle is vital to minimize chances of illness and supplements **can** help. The ingredients in Immune Support and taking Immune Support can help minimize chances of illness, Plaintiff's own Complaint supports this notion, and there is no evidence the product was defective as it is fit for its purposes. Therefore, Counts 3 and 4 of Plaintiff's Complaint ought be dismissed.

    **H.**    **Motion to Dismiss Count 6 for "Negligence Per Se"**

Count 6 of Plaintiff's complaint asserts a separate cause of action for "Negligence Per Se," and avers that Defendants' purported false and misleading statements and omissions violated various state and federal statutes.  However, Pennsylvania does not recognize a separate cause of action for negligence per se.  *Wilson v. Manor Care of Lancaster, PA, LLC*, 2014 Pa. Dist. & Cnty. Dec. LEXIS 1058, *21, 38 Pa. D. & C.5th 449, 464. Under Pennsylvania law, negligence *per se* "does not create an independent basis of tort liability but rather establishes, by reference to a statutory scheme, the standard of care appropriate to the underlying tort." *Cabiroy v. Scipione*, 2001 PA Super 29, 767 A.2d 1078, 1082 (Pa. Super. 2001) (*quoting In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 790 (3d Cir. 1999)).   As such, Count 6 of Plaintiff's Complaint should be dismissed.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request this Honorable Court enter and Order dismissing all of Plaintiff's claims against the individually named Defendants as well as Counts 1, 2, 3, 4 and 6.

Respectfully submitted,

**CHARTWELL LAW**

Date: <u>June 27, 2022</u>                           BY: <u>_/s/   John M. Wutz_</u>
                                                      JOHN M. WUTZ, ESQUIRE
                                                      I.D. No. 206435
                                                      130 No. 18th Street, 26th Floor
                                                      Philadelphia, PA  19103
                                                      T: (215) 972-7006
                                                      F: (215) 972-7008
                                                      jwutz@chartwelllaw.com

                                                      Attorneys for Defendants,
                                                      Legion Athletics, Inc., et al.